O S F HEALTHCARE SYSTEMS, d/b/a Saint Anthony Medical Center, f/k/a Sisters of the Third Order of St. Francis, Plaintiff-Appellee and Separate Appellant, v. THE COUNTY OF LEE, Defendant-Appellee and Separate Appellee (The City of Dixon, Defendant-Appellant).

Second District   No. 2—92—0225

Opinion filed January 29, 1993.

Richard A. Palmer, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for appellant.

Thomas D. Luchetti, Debra A. Delia, and Andrew C. Osen, all of Thomas D. Luchetti, P.C., of Rockford, for appellee O S F Healthcare Systems.

Daniel A. Fish, State's Attorney, of Dixon, for appellee County of Lee.

Paul A. Logli, State's Attorney, of Rockford (Charles J. Prorok, Deputy State's Attorney, of counsel), for *amicus curiae*.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, O S F Healthcare Systems (the hospital), brought this action against both defendants: the City of Dixon (the city) and the County of Lee (the county). It claimed it was statutorily entitled to receive payment for medical expenses it rendered in the care of an arrestee. The court granted the hospital summary judgment against the city, denying the city's own motion for summary judgment. The court also granted the county summary judgment against the hospital, denying the hospital's motion for summary judgment against the county. The city brought this appeal from the court's ruling as to its liability; the hospital also appeals, arguing, in the alternative, that the county was responsible for the medical expenses in question. We affirm.

The trial court found that the facts were not in dispute. According to its findings, in an altercation on May 22, 1990, the arrestee in this case was shot by city police. Apparently without any county involvement, the arrestee was transported for treatment at the hospital; he arrived at 12:30 a.m. on May 23. As a result of the May 22 altercation, the chief of the city police department signed two complaints against the arrestee; those complaints, plus two others stemming from the same incident, charged the arrestee with two

counts of attempted murder, one count of unlawful use of weapons, and one count of aggravated assault (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4(a), 9—1, 24—1.1, 12—2, respectively). The circuit court issued an arrest warrant on May 23. It was shown served by a city police officer.

The arrestee remained in the hospital until he was transferred to the county jail on August 2, 1990. During his hospital stay, he incurred over $35,000 in medical and hospital expenses. With this suit, the hospital sought reimbursement for those expenses, the central issue being whether the city or the county was liable.

After hearing summary judgment motions brought by each party, the trial court ruled that the city was responsible for its arrestee's medical expenses until the arrestee came into the county's physical custody. This appeal followed. In addition to briefs from the parties, we have allowed participation by *amicus curiae* represented by Paul A. Logli, Winnebago County State's Attorney.

■ All parties to the appeal acknowledge the import of statutory analysis in this case. Most significant is a portion of section 17 of the County Jail Act (Ill. Rev. Stat. 1991, ch. 75, par. 117). That critical language of section 17 also appears in section 3—15016 of the Counties Code (Ill. Rev. Stat. 1991, ch. 34, par. 3—15016). It was somewhat recently added to section 17 and it provides as follows. "An arresting authority shall be responsible for any incurred medical expenses relating to the arrestee until such time as the arrestee is placed in the custody of the sheriff [unless] the arrest was made pursuant to a request by the sheriff." Ill. Rev. Stat. 1991, ch. 75, par. 117, amended by Pub. Act 86—794, §17, eff. January 1, 1990.

Also significant to our analysis here are three cases: *St. Mary of Nazareth Hospital v. City of Chicago* (1975), 29 Ill. App. 3d 511, *Sisters of the Third Order of St. Francis v. County of Tazewell* (1984), 122 Ill. App. 3d 605, and *Rockford Memorial Hospital v. Schueler* (1988), 167 Ill. App. 3d 358. Under those cases, where an authority other than the county arrested an individual, the bringing of State charges was the event triggering county liability for the arrestee's medical expenses; physical custody was not determinative.

The city argues on appeal that under the above-named cases, and using that case law as a guide for the interpretation of current statutes, the filing of State charges against the arrestee here triggered the county's liability for his medical expenses. Under that analysis, the county, not the city, is liable to the hospital here. The county, *amicus curiae*, and the hospital in a portion of its argument

all emphasize statutory changes made after the *St. Mary* case was decided. They argue, with reference to those changes and the related legislative debate, that because the county never had physical custody of the arrestee, the court correctly decided that the city, not the county, was liable for the medical expenses here.

In *St. Mary*, the patient was admitted to the plaintiff hospital after Chicago police responded to a call and found him suffering gunshot wounds. The following day, while he was still being treated at the hospital, the patient was charged in a criminal complaint. (*St. Mary*, 29 Ill. App. 3d at 514.) The appellate court found that from the date he was charged with the State criminal violation the patient's custody was the county sheriff's responsibility, even though actual custody was not in the sheriff. (29 Ill. App. 3d at 516.) The court, then, recited the statutory provisions that addressed a sheriff's roles as warden of the county jail, custodian of prisoners there, and provider of medical aid for all persons under his charge; it also referred to statutes providing that the county treasury was responsible to maintain county jail prisoners. (29 Ill. App. 3d at 517.) The court asserted that, but for his injuries, the patient would have been imprisoned in the county jail; it concluded that Cook County had primary and sole liability to reimburse the hospital for the patient's medical expenses. 29 Ill. App. 3d at 517.

In the two cases consolidated in *St. Francis*, each patient was transported to the plaintiff hospital by city police; neither patient was charged with a crime before he left the hospital. (*St. Francis*, 122 Ill. App. 3d at 605-06.) The appellate court, with Justice Heiple concurring only in the result, interpreted *St. Mary* and held that the county had not been liable for incurred medical expenses; the critical factor cited by the majority was that no criminal charges had been filed to trigger county liability. 122 Ill. App. 3d at 608.

The *Rockford Memorial* court also relied importantly on the *St. Mary* case and concluded that the county was not liable for the arrestee's medical expenses. (*Rockford Memorial*, 167 Ill. App. 3d at 361.) City police brought the arrestee in that case to the plaintiff hospital. (167 Ill. App. 3d at 359.) The critical factor for the *Rockford Memorial* court was that the arrestee was not charged with an offense, and therefore was not considered within the sheriff's custody, until after his medical treatment was complete and he was released from the hospital. 167 Ill. App. 3d at 360-61.

In this case, the county argues that, as the trial court decided, *St. Mary* and the related cases are distinct from this case because they were based upon different, predecessor statutes. It also finds

support in the legislative debates that preceded the vote to add the relevant language to section 17. The city accurately points out that the relevant addition to section 17 did not actually represent the creation of new statutory language, so that it could thus cause us to distinguish *St. Mary* and its progeny. Rather, it represents merely a relocation of language that previously existed in the jail and jailers act (see Ill. Rev. Stat. 1983, ch. 75, par. 24). Based on the courts' obligation to follow established precedent, the city argues that the courts here are bound to interpret this reenacted language under *St. Mary*, so that in this case custody triggering county liability for medical expenses shifted to the sheriff when the arrestee was criminally charged, on May 23.

The fundamental rule of statutory construction is that courts attempt to give effect to the intent of the legislature. (*State of Illinois v. Mikusch* (1990), 138 Ill. 2d 242, 247.) The language of a statute must be given its plain and ordinary meaning. (*Schorsch v. Fireside Chrysler-Plymouth, Mazda, Inc.* (1988), 172 Ill. App. 3d 993, 996.) When further interpretation is necessary to ascertain legislative intent behind a statute, reviewing courts may look to legislative debates. (*Schorsch*, 172 Ill. App. 3d at 997.) Also, courts will consider a statute in its entirety, noting the subject it addresses and the legislature's apparent motive in enacting it. *Mikusch*, 138 Ill. 2d at 247.

Courts presume that in enacting statutory language the legislature acts rationally and with full knowledge both of all previous enactments and of judicial construction of prior statutes. (*Mikusch*, 138 Ill. 2d at 247-48; *Williams v. Crickman* (1980), 81 Ill. 2d 105, 111.) By reenactment of a prior statute, the legislature is presumed to have intended to adopt any clearly established judicial interpretation of that prior legislation. *Williams*, 81 Ill. 2d at 111-12.

We agree with the parties that the language recently added to section 17 is determinative of the case. We note that because that statutory language was part of the relevant statute when the *St. Francis* and *Rockford Memorial* cases were decided following the *St. Mary* case (see Ill. Rev. Stat. 1983, ch. 75, par. 24), we presume that those statutory interpretations were made with attention to it. (See *Mikusch*, 138 Ill. 2d at 247.) We find, nevertheless, that with full attention to the particular history of statutory amendment here, the particular statutory language in question, and the new evidence of legislative intent, we are not now bound to the *St. Mary* rule.

We note that in deciding the *St. Mary* case, the court made no reference to the particular language now in question. Similarly, nei-

ther the *St. Francis* nor the *Rockford Memorial* court commented on this language. More important to our conclusion that the *St. Mary* reasoning should not control, however, is the fact that legislative comments made preceding the vote to alter section 17 reveal a legislative intent contrary to a simple endorsement of the *St. Mary* rule.

In the relevant legislative debate comments, Representative Giorgi stated that the amendment that added the critical language here to section 17 made "the arresting authority responsible for any incurred medical expenses relating to the arrestee until he is placed in the custody of the sheriff. Unless [*sic*] the arrest was made at the sheriffs [*sic*] request." (86th Ill. Gen. Assem., House Proceedings, May 9, 1989, at 1 (statements of Representative Giorgi).) Representative Giorgi went on to say generally that the bill would make park districts, police departments, airport districts, forest preserve districts, and sanitary districts responsible for the medical cost of injured persons "until the sheriff accepts them." (86th Ill. Gen. Assem., House Proceedings, May 9, 1989, at 1 (statements of Representative Giorgi).) In responding to an inquiry, Representative Giorgi indicated that under the legislation in question, if municipal police brought a person to a medical facility, the county would not become liable for the associated medical costs "until they're placed in the custody of this jail." 86th Ill. Gen. Assem., House Proceedings, May 9, 1989, at 2 (statements of Representative Giorgi).

We find that the legislative debate preceding the enactment of the revised applicable version of section 17 clearly reveals a legislative intent contrary to that expressed in *St. Mary, St. Francis*, and *Rockford Memorial*. Given the content of those comments, and despite the fact that the legislature did not alter the statutory language that was in effect at the time of earlier, contrary judicial interpretation, we find that with the enactment now in effect, the legislature did not contemplate or intend that the charging of an arrestee would trigger a county's liability under the facts now before us. Rather, it demonstrated that the legislature's intent was that when an arrest is made, other than by the sheriff, and not pursuant to the sheriff's request, the county shall not be responsible for the arrestee's medical expenses until the arrestee is placed in the sheriff's physical custody.

■ Based on this evidence of the legislative intent, an intent fully consistent with a public policy encouraging timely charging of hospitalized arrestees, we find that the trial court, despite its reli-

ance on other reasoning (see *Burghardt v. Remiyac* (1991), 207 Ill. App. 3d 402, 407), correctly found that the city was liable for the arrestee's medical expenses prior to his transfer to the county jail, and granted summary judgment against the city and for the county.

Based on the foregoing, we affirm the judgment of the circuit court of Lee County.

Affirmed.

UNVERZAGT and BOWMAN, JJ., concur.